UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JOE H. BANDY, III, | Civil No. 13-204 (JRT/LIB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| STATE OF MINNESOTA, | |
| Respondent. | |

This matter is before the undersigned United States Magistrate Judge on Petitioner's self-styled application for a writ of habeas corpus under 28 U.S.C. § 2254. (Docket No. 1.) The case has been referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court finds that this action should be DISMISSED WITHOUT PREJUDICE, pursuant to Rule 4 of The Rules Governing Section 2254 Cases In The United States District Courts.[1]

**I. BACKGROUND**

Petitioner is a state prison inmate who is currently confined at the Minnesota Correctional Facility at Rush City, Minnesota. His submissions indicate that he was convicted and imprisoned some time ago, but his materials do not disclose the state criminal offense.[2] It appears that Petitioner was later released from prison on some form

---

[1] Rule 4 provides that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

[2] The Court notes, however, that in 1999 it appears the Petitioner was convicted for criminal sexual conduct, and depriving another of custodial or parental rights. See State v. Bandy, No. C9–99–1371 (Minn.App. 2000), 2000 WL 665626 (unpublished opinion), rev. denied, July 25, 2000.

of "supervised release" basis. Soon thereafter, however, Petitioner was civilly committed as a "Sexually Dangerous Person." See In re Commitment of Bandy, No. A11-901 (Minn.App. 2011), 2011 WL 5026399 (unpublished opinion). He was then assigned to the Minnesota Sex Offender Program, ("MSOP"), in Moose Lake, Minnesota.

While Petitioner was at the MSOP, he was involved in an altercation with another MSOP detainee. As a result, Petitioner was accused of violating the terms of his supervised release for "failure to refrain from assaultive abusive or violent behavior or threats of violence." (Petition, p. 2. § 4.4.) Petitioner entered a plea of "not guilty" to the alleged violation of his supervised release claiming that he had acted in self-defense during the MSOP altercation. (Petition, p. 2, § 4.5; Petitioner's "Memorandum or Law in Support of Habeas Corpus," [Docket No. 2], pp. 1-2.)

In August 2012, the Minnesota Department of Corrections conducted an "HRU hearing"[3] on the allegations against Petitioner. He was found guilty of violating the terms of his supervised release, and he was consequently returned to prison for a term of 210 days. (Petition, p. 2, §§ 4.1 - 4.4; Petitioner's Appendix, [Docket No. 1-1], Exhibit A.) Petitioner attempted to pursue an administrative appeal of the HRU decision, but that effort was unsuccessful. (Petition, p. 2, § 4.8 - 4.9.) There is nothing in any of Petitioner's submissions which suggests that he has challenged the HRU decision in any state court

---

[3] An "HRU hearing" is a hearing conducted by the Hearing and Review Unit of the Minnesota Department of Corrections. Such hearings are conducted when Minnesota prisoners are accused of violating the conditions of supervised release. If an HRU hearing officer determines that a previously-released inmate has violated the conditions of his release, the inmate can be returned to prison. See e.g. Truelson v. Fabian, No. A08-137 (Minn.App. 2008), 2008 WL 933543, (unpublished opinion) at *1 (prisoner returned to prison after HRU officer found that he had violated the conditions of his release).

proceedings.

Petitioner's current habeas corpus petition challenges the legality of the HRU proceedings that caused the revocation of his supervised release. Petitioner claims that his constitutional rights to due process and equal protection were violated during the course of those proceedings, because --

(1) the HRU decision was based on "fraudulent information," (Petitioner's "Memorandum or Law in Support of Habeas Corpus," p. 2);

(2) Petitioner's administrative appeal from the HRU decision was wrongly deemed to be untimely, (id., p. 8); and

(3) Petitioner was treated unfavorably because of his race, (id., pp. 9-10).

Petitioner is seeking a writ of habeas corpus that would overturn the HRU decision, restore his supervised release, and cause him to be released from prison.

However, the Court finds that this action must be summarily dismissed, because Petitioner failed to exhaust his available state court remedies before seeking federal habeas corpus relief.

## II. DISCUSSION

It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal law errors raised

by state prisoners. O'Sullivan, 526 U.S. at 844; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose v. Lundy, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

To satisfy the exhaustion of state court remedies requirement, a prisoner must fairly present all of his federal law claims to the highest available state court before seeking habeas corpus relief in federal court. O'Sullivan, 526 U.S. at 845; Duncan, 513 U.S. at 365-66; McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court"). Because federal courts will not entertain unexhausted habeas corpus claims, petitions that include such claims are subject to summary dismissal under Rule 4 of the Governing Rules.

Here, it clearly appears that Petitioner's current habeas corpus claims have not been fairly presented to the Minnesota Supreme Court. As noted above, there is nothing to indicate that Petitioner has challenged the HRU revocation of his supervised release in any state court proceeding. Therefore, Petitioner has not complied with the exhaustion of state court remedies requirement prescribed by § 2254(b).

Furthermore, there is a remedy available to Petitioner under state law that he has not yet exhausted. If a Minnesota state prisoner believes that he is being illegally detained pursuant to an invalid revocation of his parole or supervised release, and he believes that he should therefore be released from prison, he can seek relief by applying for a writ of habeas corpus in state court under Minn.Stat. § 589.01. See Kelsey v. State, 283 N.W.2d 892, 894-95 (Minn.App. 1979) ("state habeas corpus is an appropriate remedy" for "reviewing allegations of failure of parole authorities to follow applicable statutory and

4

constitutional principles"); see also Harju v. Fabian, No. A05-1820 (Minn.App. 2006), 2006 WL 2255898 (unpublished opinion) at * 1 ("[a]n offender whose conditional release has been revoked may seek review of the revocation by petitioning the district court for a writ of habeas corpus... [and a] denial of a writ of habeas corpus may be directly appealed"); Larson v. Fabian, No. A05-1355 (Minn.App. 2006), 2006 WL 1320474 (unpublished decision) (challenge to allegedly improper revocation of intensive supervised release considered in a state court habeas corpus proceeding); State ex rel. Costello v. Roy, No. A11-1293, (Minn.App. 2011), 2011 WL 5119379, (unpublished opinion) (same).[4] Moreover, if Petitioner is not granted relief under § 589.01 at the state trial court level, he can seek further review of his claims in the Minnesota Court of Appeals, and, if necessary, in the Minnesota Supreme Court. Minn.Stat. § 589.29; Minn. R. App. P. 117.

The Court, therefore, finds that Petitioner has not exhausted his available state court remedies for his current habeas corpus claims, as required by 28 U.S.C. § 2254(b). Because it appears from the present record that Petitioner has not even sought review of his supervised release revocation in any state court, this Court must recommend that this action be summarily dismissed. However, it will be recommended that the action be dismissed without prejudice, so that Petitioner can later return to federal court, (if necessary), after he has exhausted his state court remedies for every claim that he seeks

---

[4] In Costello, the Minnesota Court of Appeals held that "a petition for a writ of habeas corpus may be used to obtain relief only for constitutional violations or jurisdictional defects, not for violations of statutes or other sources of law." 2011 WL 5119379 at *3 (emphasis added). This limitation on the remedy provided by Minnesota's state habeas corpus statute is consistent with federal law, because only federal constitutional claims can be raised in a federal habeas petition. See Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension").

5

to raise in federal court.  See Gray v. Hopkins, 986 F.2d 1236, 1237 (8th Cir.), cert. denied, 510 U.S. 839 (1993).[5]

## III.  CERTIFICATE OF APPEALABILITY

A state prisoner cannot appeal an adverse ruling on a federal habeas corpus petition unless he is granted a Certificate of Appealability, ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. Daniel, 529 U.S. 473, 484 (2000).  In this case, in light of the well settled principles mandating exhaustion of available state court remedies, it is virtually certain that no other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here.  Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about this case that warrants appellate review.  It is therefore recommended that Petitioner should not be granted a COA in this matter.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's habeas corpus petition, (Docket 1), be **DENIED**;

---

[5]  Petitioner is again reminded that he will not satisfy the exhaustion requirement unless he pursues every available avenue of appellate review, (assuming relief is not granted at the state district court level), including a petition for review in the Minnesota Supreme Court.  O'Sullivan, 526 U.S. at 845.

2. This action be **DISMISSED WITHOUT PREJUDICE**; and

3. Petitioner should **NOT** be granted a Certificate of Appealability.

Dated: February 12, 2013

    s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

# N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 26, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.